**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| J.G., | : | **Civil Action No. 24-cv-7032 (SRC)** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF SOCIAL | : |  |
| SECURITY, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |

**CHESLER**, District Judge

This matter comes before the Court on the appeal by Plaintiff J.G. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 1381, et seq. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the parties' submissions, (D.E. No. 12 ("Pl.'s Mov. Br."); D.E. No. 14 ("Def.'s Opp. Br."); D.E. No. 15 ("Pl.'s Reply Br.")), the Court decides this matter without oral argument and, for the reasons set forth below, the Court affirms the decision of the Commissioner.

I.    BACKGROUND

On March 31, 2021, Plaintiff filed an application for DIB.  (D.E. No. 7, Administrative

Record ("Tr.") at 22.)  Plaintiff alleged disability starting March 30, 2021.  This claim was initially

denied on September 7, 2021, and upon reconsideration on January 8, 2022.  (Id.)  A hearing was

held before Administrative Law Judge ("ALJ") Kathleen Cornell on January 8, 2024, and on

February 13, 2024, the ALJ issued a decision determining that Plaintiff was not disabled under the

Act because, given Plaintiff's residual functional capacity ("RFC"), Plaintiff remained capable of

performing jobs existing in significant numbers in the national economy.  Plaintiff sought review

of the ALJ's decision from the Appeals Council.  After the Appeals Council denied Plaintiff's

request on April 22, 2024, the ALJ's decision became the Commissioner's final decision, and

Plaintiff filed this appeal.

In the February 13, 2024 decision, the ALJ found that, at step three, Plaintiff did not meet

or equal any of the Listings.  At step four, the ALJ found that Plaintiff had the RFC to perform a

full range of work at all exertional levels with certain limitations.  (Tr. at 28.)  The ALJ also found

that Plaintiff was unable to perform his past relevant work.  (Id. at 33.)  At step five, the ALJ found

that there were other jobs that exist in significant numbers in the national economy that Plaintiff

could perform.  Thus, the ALJ determined that Plaintiff was not disabled within the meaning of

the Act. On appeal, Plaintiff alleges that the ALJ: (i) failed to evaluate Plaintiff's impulse control

disorder at step two which culminated in "an incomplete RFC, necessitating remand"; (ii) erred in

her treatment of the medical opinions; and (iii) erred in her treatment of the Department of

Veterans' Affairs rating based on individual unemployment.

## II.    LEGAL STANDARD

This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence "is more than a mere scintilla" of evidence but may be less than a preponderance.  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004). The Supreme Court reaffirmed this in Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

## III.    DISCUSSION

Plaintiff bears the burden in the first four steps of the analysis of demonstrating how his impairments, whether individually or in combination, amount to a qualifying disability.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  Moreover, Plaintiff must not only show that the Commissioner erred, but also that the error was harmful.  The Supreme Court explained this operation in a similar procedural context in Shinseki v. Sanders, 556 U.S. 396, 409 (2009), which concerned review of a governmental agency determination.  The Court stated, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Id.  In such a case, "the claimant has the 'burden' of showing that an error was harmful."  Id. at 410.  Thus, at the first four steps, Plaintiff must show that but for the error, he might have proven his disability.

As to Plaintiff's first argument, that the ALJ erred at step two in not finding impulse control disorder to be a severe impairment, this cannot be more than harmless error. The Third Circuit has stated that "[t]he step-two inquiry is a *de minimis* screening device to dispose of groundless claims." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003). The analysis at step two is independent of the analysis at later steps. Inclusion or exclusion of particular impairments at step two does not affect the ultimate disability determination. The ALJ found other severe impairments at step two—major depressive disorder, generalized anxiety disorder, chronic post-traumatic stress disorder, history of traumatic brain injury with residual seizure disorder and mild neurocognitive disorder—and adding one more would not have had any impact on the outcome of the five-step analysis. Even if Plaintiff is correct that the evidence supports finding additional severe impairments, the decision at step two did not prejudice Plaintiff.

Plaintiff's next argument concerns the ALJ's treatment of medical opinions. Plaintiff argues that the ALJ "failed to articulate an adequate reason as to why she assigned no persuasive value to the Plaintiff's longstanding treating provider, and further, failed to include limitations consistent with those opinions she found to be persuasive, resulting in remandable error." (Pl.'s Mov. Br. at 22-23.)  At step four, the ALJ determined that Plaintiff retained the RFC to perform "a full range of work at all exertional levels" with the following non-exertional limitations:

> he can never climb ladders, ropes, or scaffolds; should avoid all exposure to hazards such as heavy machinery and unprotected heights; can understand, remember, and carry out simple instructions, can use judgment to make simple work-related decisions; can deal with occasional changes in a routine work setting; can have occasional interaction with coworkers and supervisors, but no interaction with the general public; and cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.

(Tr. at 28.)

4

In arriving at the RFC determination, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence[.]" (Id.)  The ALJ considered Plaintiff's statements regarding his pain and symptoms and found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms" were not "entirely consistent with the medical evidence" of record. (Id. at 29.)

The ALJ also looked to medical opinions and prior administrative findings, including the opinion of Plaintiff's treating neuropsychologist, Dr. Jay Gordon.  The ALJ noted Dr. Gordon diagnosed Plaintiff with mild neurocognitive disorder and opined that Plaintiff "needs unscheduled breaks for 1.5-2 hours daily due to fatigue and anxiety" and has "marked to extreme limitations in work-related mental abilities[.]"  (Id. at 31-32.)  In a December 14, 2021 Medical Source Statement, Dr. Gordon noted that Plaintiff had marked or extreme limitations in 9 out of 15 mental abilities and aptitudes needed to do unskilled work. (Tr. at 501-05.)  A marked limitation indicated that Plaintiff could not perform these activities independently and effectively on a sustained basis in a regular work setting whereas an extreme limitation indicated that Plaintiff could not perform these activities in a regular work setting at all.  (Id.)  Dr. Gordon determined that these limitations applied to Plaintiff's ability to maintain attention for two-hour segments, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in a routine work setting, and deal with normal work stress, among others.  (Id.)  Dr. Gordon also noted that Plaintiff's anxiety, depression, PTSD, and cognitive disorders result in an unpredictable need for Plaintiff to rest for a total of 1.5-2 hours per day.  (Id. at 503.)  The ALJ found Dr. Gordon's opinion unpersuasive, noting he "gave no significant narrative explanation or evidentiary

support" for his conclusion and further noted the opinion was "unsupported by treatment and examination notes[.]" (Tr. at 32.)

Plaintiff first argues that the ALJ erred in her treatment of Dr. Gordon's opinion because "a review of the medical evidence of record indicates that [Dr. Gordon's] opinion is, in fact, supported by the medical evidence of record, and therefore was entitled to at least some persuasive value." (Pl.'s Mov. Br. at 24.) Plaintiff states that the ALJ "improperly dismisses" this opinion and "recites only a blanket statement that Dr. Gordon's opinion is inconsistent with the record" but fails to provide any citations to support this finding. (Id. at 26.)

In reviewing the record, the Court finds the ALJ's assessment of Dr. Gordon's opinion consistent with the Regulations and supported by substantial evidence. The Regulations require that all medical opinions be evaluated for persuasiveness based primarily on the factors of supportability (extent to which a medical source has supported an opinion with explanations and evidence) and consistency (with other medical evidence). See 20 C.F.R. § 404.1520c. "To satisfy this requirement, a[n] [ALJ] need not reiterate the magic words 'support' and 'consistent' for each doctor." Zaborowski v. Comm'r of Soc. Sec., 115 F.4th 637, 639 (3d Cir. 2024). In assessing medical evidence, the Third Circuit has held that "form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). Here, in finding Dr. Gordon's opinion unpersuasive, the ALJ explained that Dr. Gordon marked off a checkbox form without a narrative explanation or evidentiary support, and further noted that his opinion was not supported by his own treatment and examination notes. (Tr. at 32.) As in Zaborowski, "[t]here was no need to say more than that." 115 F.4th at 640. The Court finds the ALJ "weave[d] supportability and consistency" in her explanation, consistent with the requirements of 20 C.F.R. § 404.1520c. Id. at 639-40.

Furthermore, substantial evidence supports the ALJ's assessment of Dr. Gordon's opinion for the same reasons. See Zaborowski, 115 F.4th at 639-40 (finding substantial evidence supported the ALJ's decision about how much weight to give a medical opinion, where the opinion of Plaintiff's treating psychiatrist was "not consistent with the record that shows that the claimant has social avoidance issues, but he is able to cope within his limits."). Both Plaintiff and the Commissioner point to a neuropsychological evaluation conducted by Dr. Gordon in October 2021, where he states:

> Patient was administered neuropsychological testing. Test results indicated the presence of continued residual cognitive impairments secondary to the TBI he sustained in his MVA on 12/7/2017. ***Mild impairments were found with sustained attention and executive functioning***. The nature and degree of his cognitive impairments are typical of a traumatic brain injury. ***All other measures of cognitive functioning were found to be within normal limits and generally in the average range.*** Additionally, his current severe degree of emotional distress, anxiety, and depression is likely further impacting his ability to attend and concentrate.

(Tr. at 475-78; Pl.'s Mov. Br. at 24; Def.'s Opp. Br. at 18) (emphasis added). In short, Dr. Gordon's testing revealed that the residual cognitive impairments Plaintiff sustained were mild, and all other cognitive functioning was normal. Dr. Gordon noted that Plaintiff's "current severe degree of emotional stress" would likely impact his ability to attend and concentrate, but did not indicate that the effects were lasting or long-term. Although Plaintiff cites to this record to argue that the ALJ erred in giving little weight to Dr. Gordon's opinion, this evidence supports the ALJ's finding that the severe limitations reported by Dr. Gordon, and his conclusion that Plaintiff needs to rest 1.5-2 hours per day, were not supported by his own treatment and examination notes. Indeed, Dr. Gordon's treatment note indicating that Plaintiff had only mild impairments with sustained attention and executive functioning, and normal cognitive functioning in all other measures, is inconsistent with his determinations in the December 14, 2021 Medical Source

Statement that Plaintiff could not: (i) maintain attention for two-hour segments; (ii) perform at a consistent pace without an unreasonable number and length of rest periods; and (iii) deal with normal work stress, ***at all in a regular work setting***, and also could also not: (i) respond appropriately to changes in a routine work setting; (ii) get along with co-workers without behavioral extremes; and (iii) ask simple questions, or accept instructions and respond appropriately to criticism from supervisors, ***effectively and on a sustained basis in a regular work setting***. Dr. Gordon's own neuropsychological assessment report constitutes substantial evidence to support the ALJ's assessment of Dr. Gordon's opinion. Plaintiff has not pointed to specific evidence in Dr. Gordon's treatment notes which supports the severe limitations he assessed, and thus has failed to persuade this Court that the ALJ erred and that the error was harmful.

Moreover, the Court is not persuaded that the other evidence Plaintiff points to, consisting of Dr. Gordon's records noting Plaintiff's "outbursts of anger" and conditions such as impulse control disorder, demonstrates that the ALJ's assessment of Dr. Gordon's opinion is not supported by substantial evidence. (Pl.'s Mov. Br. at 24.) The Third Circuit has held that "[a] federal court's substantial-evidence review is 'quite limited.'" Davern v. Comm'r of Soc. Sec., 660 Fed. App'x 169, 173-74 (3d Cir. 2016) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). A district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). By arguing that "a review of the medical evidence of record indicates that [Dr. Gordon's] opinion is, in fact, supported by the medical evidence of record, and therefore was entitled to at least some persuasive value," Plaintiff has done no more than refer to evidence which he believes deserved greater weight and asks the Court to reweigh the evidence and substitute its findings for the Commissioner's, which it may not do. (Pl.'s Mov. Br. at 24.)

Moreover, the Court is not persuaded that Dr. Gordon's documentation of Plaintiff's outbursts of anger supports the dramatic limitations in the RFC assessed by Dr. Gordon.

Next, Plaintiff argues that "despite finding the opinions of the State Agency Medical Consultants to be persuasive" the ALJ did not offer limitations consistent with their opinions "and offers no explanation as to why they are omitted from consideration in the RFC." (Pl.'s Mov. Br. at 26-27.) The Commissioner argues that the ALJ properly analyzed and incorporated the medical findings she found persuasive in the RFC determination. (Def.'s Opp. Br. at 22.)

The fundamental problem for Plaintiff is that this Court agrees with the Commissioner that the ALJ properly analyzed and incorporated the Disability Determination Services ("DDS") medical experts' findings she found persuasive in the RFC, which constitutes substantial evidence supporting the RFC determination at step four.[1] (Def.'s Opp. Br. at 22.) In arriving at the RFC determination, the ALJ adopted the opinions of medical experts utilized by the DDS who opined that Plaintiff had no exertional, manipulative, visual, or communicative limitations, but did have certain non-exertional limitations in that Plaintiff could never climb ladders, ropes, or scaffolds and was to avoid all exposure to hazards such as machinery and heights. (Tr. at 28, 77-84.) The ALJ found the reports of the DDS experts to be persuasive as they were "consistent with the medical record, specifically, the relatively mild psychiatric symptoms documented in treatment notes, mental status exams, and psychological testing." (Id. at 32.) However, the ALJ also noted that the medical evidence of record, specifically Plaintiff's performances on mental status exams and statements on his function report, supported "moderate rather than mild limitations in understanding, remembering, or applying information and in concentrating, persisting, or

---

[1] As noted by the Commissioner, many of the statements Plaintiff points to do not constitute the ultimate RFC assessment by the DDS medical experts but rather are questions used in the initial disability rating form. (See Def.'s Opp. Br. at 21-22.)

maintaining pace." (Id. at 26-27, 32-33.)   Thus, as to Plaintiff's mental RFC, the ALJ not only added limitations consistent with the DDS experts' finding that Plaintiff "can understand and execute simple instructions and directions, can maintain [concentration, persistence, and pace] and attendance, [and] can adapt and relate" but included greater limitations than those stated by the consultants in determining that Plaintiff "can understand, remember, and carry out simple instructions, can use judgment to make simple work-related decisions; can deal with occasional changes in a routine work setting; can have occasional interaction with coworkers and supervisors, but no interaction with the general public; and cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas." (Id. at 28, 32-33.)   On this record, the Court cannot say that the ALJ's decision is not supported by substantial evidence.

Plaintiff's final argument is that the ALJ erred in her treatment of the VA decision finding Plaintiff 70% disabled due to anxiety and entitled to individual unemployability. (Pl.'s Mov. Br. at 28.)   Plaintiff argues that "it is unclear from the [ALJ's] decision whether or not the ALJ considered [] specific pieces of evidence," relating to limitations the VA determined Plaintiff experiences. (Id. at 29.)   However, as noted by the Commissioner, the Regulations have changed and under the new regulatory framework, a VA disability rating "is inherently neither valuable nor persuasive" to the issue of whether Plaintiff is disabled under the Act, and the ALJ is not required to provide "any analysis about how [she] considered such evidence in [her] determination or decision." 20 C.F.R. § 404.1520b(c).   Thus, the Court finds no error in the ALJ's treatment of the VA decision, and Plaintiff does not explain any error or point to any specific piece of evidence underlying the VA decision which he argues the ALJ failed to consider and thus, harmed him.

In short, Plaintiff has not met his burden on appeal.   The ALJ's evaluation of Dr. Gordon's opinion is consistent with 20 C.F.R. § 404.1520c and supported by substantial evidence.   The ALJ

determined that Plaintiff had the RFC to perform work at all exertional levels with certain non-exertional limitations.  This determination is supported by the DDS medical experts' opinions and Plaintiff's treatment and examination notes.  Plaintiff has failed to persuade this Court that the ALJ erred in her decision, has not shown that the evidence supported a decision in his favor, and thus has made no demonstration that he was harmed by any errors to demonstrate prejudice as required by Shinseki.  As in Rutherford v. Barnhart, "a remand is not required here because it would not affect the outcome of the case."  399 F.3d at 553.

## IV.    CONCLUSION

For the reasons set forth above, this Court finds that the ALJ's decision is supported by substantial evidence and the decision of the Commissioner is affirmed.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: June 10, 2025

11